IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE,  :
                     :
        Petitioner   :   CIVIL NO. 1:15-CV-00013
                     :
   vs.              :
                     :
WARDEN DAVID EBBERT,   :   (Judge Rambo)
                     :
      Respondent   :

## MEMORANDUM

## Introduction

On January 5, 2015, Kareem Hassan Milhouse, a federal prisoner confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he named David Ebbert, the Warden of USP-Lewisburg as the Respondent. (Doc. 1.) In the petition Milhouse indicates that he was sentenced by the United States District Court for the Eastern District of Pennsylvania for unspecified offenses.[1] (Id.

---

1.  Milhouse is serving a sentence of 84 years and 6 months for, inter alia, armed bank robbery, use of a firearm during a crime of violence, aggravated sexual assault, and escape while in custody of an institution or officer. See Milhouse v. O'Brien, Civil No. 1:15-CV-714, 2016 WL 3181855, at *2 (M.D.Pa. June 8, 2016).
(continued...)

at 1.)   He has an expected release date of December 31, 2080.[2]

Milhouse claims that his due process rights were violated during the course of a prison disciplinary hearing held on September 3, 2014, at USP-Lewisburg. (Id.)   Milhouse was found guilty under prison regulations of attempted escape (Prohibited Act 102A) and threatening another with bodily harm (Prohibited Act 203),[3] and received sanctions, including 60 days of disciplinary segregation and the loss of 41 days of good conduct time for the attempted escape, and 30 days disciplinary segregation and the loss of 27 days of good

---

1.   (...continued)
Milhouse is a frequent filer in this court. He has filed numerous petitions pursuant to § 2241.  One of those prior petition reveals that the sentences Milhouse is serving were imposed on December 3, 2007, and February 15, 2008. See Milhouse v. Ebbert, Civil No. 1:16-Cv-1348, slip op. at 3 n.6 (M.D.Pa. Aug. 12, 2016).

2.  See Federal Bureau of Prisons, Inmate Locator, Inmate Number 59904-066, https://www.bop.gov/inmateloc/ (Last accessed August 18, 2016).

3.  Prohibited Acts under the regulations of the Bureau of Prisons are divided into four severity categories: Greatest (100 level), High (200 level), Moderate (300 level) and Low (400 level).  28 C.F.R. § 541.3.

conduct time for threatening another with bodily harm.
(Id.) In the petition Milhouse claims that his due
process rights were violated because he never admitted
that he was guilty of the incident, evidence was
fabricated, there was no evidence to support the
allegations, he is actually innocent and he was
initially charged with Prohibited Act 100A (attempting
to kill staff) but the Disciplinary Hearing Officer
("DHO") found him guilty of Prohibited Act 102A and that
during the hearing the DHO charged him with Prohibited
Act 203. (Id.) Milhouse requests that the incident
report be expunged from his record.(Id.) Milhouse in the
petition claims he exhausted his administrative remedies
by appealing to the Northeast Regional Office of the
Bureau of Prisons ("BOP") on October 1, 2014, and
received a decision from that office on November 7,
2014, and then claims that he appealed to the Central
Office of the BOP on November 7, 2014, but did not
receive a response from that office. (Id.) Along with
the petition Milhouse filed a motion to proceed in forma
pauperis. (Doc. 2.)

On April 10, 2015, the court issued an order granting Milhouse's motion for leave to proceed <u>in forma pauperis</u> and directing that a response to the petition be filed by Respondent. (Doc. 4.)  After being granted an extension of time, the Respondent filed a response on May 5, 2015. (Doc. 8.)  The matter became ripe for disposition on May 18, 2015, when Milhouse filed a traverse. (Doc. 9.) The Respondent argues that Milhouse's petition should be denied because he failed to exhaust his administrative remedies and because the DHO met the evidentiary standard to find that Milhouse committed the prohibited acts and Milhouse was accorded his due process rights under case law and the BOP regulations. For the reasons set forth below, Milhouse's petition will be denied.  The court will first review the legal principles relating to exhaustion of administrative remedies and procedural due process and then apply those principles to the facts of this case.

## Exhaustion of Administrative Remedies

The BOP has established an administrative remedy procedure, which is set forth at 28 C.F.R. § 542.10 et

seq., whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  Inmates must first informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at § 542.14(a). If dissatisfied with the response, the inmate may then appeal an adverse decision to the Regional Office and then to the Central Office of the BOP. Id. at §§ 542.15(a). However, the first two steps, informal resolution and appeal to the Warden, do not apply to appeals from decisions of a DHO. 28 C.F.R. § 542.14(d)(2). The inmate is to appeal directly to the Regional Office within twenty (20) days of the decision of the DHO. Id.  No administrative remedy appeal is considered to have been fully and finally exhausted until it has been denied by the BOP's Central Office. Id. Furthermore, the fact that the Regional Office fails to respond to an appeal does not relieve an inmate of

his responsibility to proceed to the final step, i.e.,
submitting an appeal to the Central Office of the BOP
because an appeal to the Regional Office is deemed
responded to and denied "[i]f the inmate does not
receive a response within [30 calendar days of
submission of the appeal]." 28 C.F.R. § 542.18. Under
those circumstances "the inmate may consider the absence
of a response to be a denial at that level." Id.
Likewise, a failure of the Central Office to act within
40 calendar days is considered a denial. Id. However,
the Central Office as stated above may extend for a
period of 20 days the time for it to decide the appeal
and so notify the inmate. Id.

**Due Process Under Case Law And Federal Regulations**

Liberty interests protected by the Fifth
Amendment may arise either from the Due Process Clause
itself or from statutory law. Torres v. Fauver, 292
F.3d 141 (3d Cir.2002). It is well-settled that "prison
disciplinary proceedings are not part of a criminal
prosecution and the full panoply of rights due a
defendant in such proceedings does not apply." Wolff v.

McDonnell, 418 U.S. 539, 556 (1974).  Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id.  Since Milhouse's sanctions did include the loss of good conduct time, Milhouse has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the

7

standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the petitioner. Hill, 472 U.S. at 457. The Hill standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-502 (3d Cir. 1989).

The inmate disciplinary procedures of the BOP are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an incident report when there is

8

reasonable belief that a violation of BOP regulations
has been committed by an inmate and the staff considers
informal resolution of the incident inappropriate or
unsuccessful.  28 C.F.R. § 541.5.  The incident is then
referred to the Unit Discipline Committee ("UDC") for an
initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held]
within five work days after [the incident report] is
issued" and does not include the initial day staff
learns of the incident, weekends or holidays.  Id.  If
the UDC finds that a prisoner has committed a prohibited
act, it may impose any of the available sanctions set
forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss
of good conduct time, disciplinary segregation, or
monetary fine.  Id.  If the alleged violation is serious
and warrants consideration for more than minor
sanctions, or involves a prohibited act listed in the
greatest severity category, the UDC must refer the
matter to a DHO for a hearing.  Id.

A DHO "will only conduct a hearing on the
incident report if referred by the UDC." 28 C.F.R. §
541.8. An inmate will receive written notice of the

9

charges 24 hours before the DHO hearing unless the
inmate waives the notice requirement in which case the
DHO can conduct the hearing sooner. Id.  The inmate is
permitted to have a staff representative at the hearing
and entitled to make a statement and present documentary
evidence. Id.

    After the hearing the DHO will either (1) find
the inmate committed the prohibited act or similar one
described in the incident report;[4] (2)find the inmate

---

4.  28 C.F.R. § 541.8(a)(1) provides that a DHO may make
a finding that the inmate "committed the prohibited
act(s) charged, and/or similar prohibited act(s) as
described in the incident report." See Thorton v.
Thomas, 2013 WL 6858741, at *5 (M.D.Pa. Dec. 30, 2013)
)("To the extent Petitioner argues taht the DHO found
him guilty of Fighting, an act, he claims he was not
charged with, BOP policy as codified at 28 C.F.R. §
541.8(a)(1) provides that the DHO may find that the
inmate "committed the prohibited act(s) charged, and/or
a similar prohibited act(s) as described in the
incident report."); Sanders v. Zickefoose, 2015 WL
4729831, at *8 (M.D.Pa. Aug. 10, 2015)(all that is
required is that the factual nature of the charge or
charges remain the same). In the present case the facts
relating to the prohibited acts charged and those of
which the DHO found Milhouse guilty remained the same.
Moreover, Milhouse was found guilty of less severe
infractions. See Guerrero v. Recktenwald, 542 Fed.
App'x 161, 164 (3d Cir. Oct. 24, 2013)("The DHO
considered these operative facts and acted within his
authority to conclude that Guerrero committed a
similar, lesser offense with which he was charged and
                                        (continued...)

did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. Id. If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2[5] of § 541.3. Id. Finally, the written report or decision of the DHO will contain the following:(1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. Id.

**Discussion**

The records that the Respondent submitted which Milhouse has not rebutted with contrary evidence reveal that Milhouse failed to exhaust his administrative remedies and received all of the due process rights under Wolff, Hill and the BOP regulations.

---

4. (...continued)
Guerrero received adequate notice of the proceedings against him.").

5. Table 2 set forth sanctions for repeated prohibited acts within the same severity level.

On August 13, 2014, Milhouse was provided with a
copy of Incident Report 2616520 by Lieutenant H. Ready.
(Doc. 8-1, at 5, 9.) The incident report, which was
prepared by Special Investigative Agent S.V. Heath,
charged Milhouse with committing Prohibited Acts 100A
(attempted killing) and 102A (attempted escape), and
states in relevant part as follows:

> On 8/13/14, at 2:00pm, an investigation
> concluded inmate Kareem Milhouse, #59904-066,
> was planning to effectuate an escape while on
> an outside hospital trip.  Specifically, staff
> conducted a random cell search of cell G-104
> housing inmate Huffman #81006-004, on 7/19/14
> and found a kite written by inmate Milhouse to
> "Tex" discussing an escape plot.  Inmate Huffman
> was identified as "Tex." The kite[6] stated, "Tex,
> The plan has to be more relaxed and since you
> have 3 trustworthy people - and you join DLK -
> that additional trustworthy people that's a
> small group. But you and your people has to
> come get me once I go on a hospital trip. Real
> simple, since you got 29 months left, the
> first mission is to break me out. I'll supply
> the finances! Look, I always go to a kidney
> specialist in Williamsport which is 30 minutes
> from here. It's always a LT and 3 guards who
> take me. They have 9MM Tarus hand guns and
> someone watch the parking lot.  Only 3 have hand
> guns and the 4th has control of the electric
> shocker - he carry a book bag! Once you jump out
> with the AR 15 and your people, secure the guy
> with the book bag and kill all the guards.

---

6.  "Kite" is a prison slang term for a contraband
letter or written message.

> Afterwards, all your targets are to be hit at the same precious (sic) times. So you must study their schedules. It's time to make an impact. W/R bro your now DLK."

(Id. at 9, § 11 of Incident Report.) Milhouse was interviewed by prison staff on August 12, 2014, at which time Milhouse was shown the "kite" and admitted to writing it and sending it to Huffman. (Id. at 2, 5.) Milhouse appeared before the UDC on August 19, 2013, and stated that "Heath did an excellent job" and the UDC referred the charges to the DHO for a hearing. (Id.) The UDC advised Milhouse of his rights, including the right to have a written copy of the charges, a staff representative to assist him at the hearing before the DHO, and the right to present documents and testimony of witnesses at the hearing before the DHO. (Id. at 12.)

The hearing before the DHO was held on September 3, 2014, more than 24 hours after Milhouse received notice of the charges. (Id. at 5.) Milhouse waived his right to a staff representative, he denied the charges and made a statement which is summarized in the DHO report as follows:

> Inmate Milhouse indicated he understood his rights and was ready to proceed with the

13

> hearing. Inmate Milhouse had no documents for
> the DHO to consider. Inmate Milhouse testified
> Section 11 of the incident report is inaccurate.
> Inmate Milhouse testified further, I am telling
> you I did not do this. Huffman is the one that
> wants to kill staff, not me. The FBI approached
> me two years ago about Huffman. It was not my
> writing on the letter, it was Huffman's writing.
> I was being sarcastic when I told the UDC that
> "Heath did an excellent job" when she wrote
> the incident report. Inmate Milhouse made no
> complaints of procedural error during the
> hearing.

(Id.) Milhouse requested one witness, D. Sprout, of the

Lewisburg Prison Project. (Id. 5, 16.) Milhouse claimed

that Mr. Sprout "could prove [he] was innocent." (Id. at

5.) The DHO contacted and interviewed Mr. Sprout by way

of telephone and Mr. Sprout merely stated that he had

"no knowledge of an escape attempt or plot." (Id.)

The DHO in ruling on the incident report

considered the following documentary evidence: (1) the

incident report and investigation; (2) the letter

written by Milhouse to Huffman; and (3) known writing

samples of inmate Milhouse which matched the handwriting

in the "kite." (Id. at 6, 13-15.) The DHO found that

Milhouse was not credible and further stated in his

decision finding him guilty of Prohibited Acts 102A and

203 as follows:

> During an interview with you on August 12, 2014,
> at 8:45 am, you were shown the kite . . . and
> admitted to writing it and sending it to inmate
> Huffman. You have a projected release date of
> 2080 lending additional credence to the words
> you admitted to writing about attempting to
> escape from an outside hospital and having all
> of the escorting staff members murdered to
> effectuate the escape.
> You denied the charges, and presented as your
> defense that "you did not do this", that inmate
> Huffman wants to kill staff, that it was not
> your handwriting contained in the letter, that
> it was inmate Huffman's writing contained in the
> letter, and that you were "being sarcastic" when
> you informed the UDC that the reporting officer
> "did an excellent job" when she wrote the
> incident report.  The DHO gave greater weight to
> the reporting officer's written statement that
> you planned to effectuate an escape and kill
> staff, than to your claim you did not commit the
> prohibited acts.  This is based on the fact the
> reporting officer was very specific concerning
> your misconduct in section 11 of the incident
> report; information in section 11 of the
> incident report substantiates you attempted
> and planned to depart from custody without
> permission or authority or before your official
> release from Bureau of Prison custody;
> information in section 11 of the incident report
> also substantiates you communicated your written
> intent to inflict harm on staff . . . your
> know handwriting style matched the handwriting
> contained in the aforementioned letter you wrote
> where you attempted to employ Huffman to kill
> staff in order to effectuate an escape . . .
> The DHO considered your claim that it was not
> your handwriting contained in the letter, but
> gives greater weight of the evidence to the

> reporting officer's claim that it was your
> handwriting in the letter. The reporting officer
> approached you and you admitted you wrote the
> letter. The letter you wrote was compared to
> your know handwriting style to the letter you
> wrote, and it was determined that you wrote the
> letter. The DHO also compared your known
> handwriting style to the letter you wrote, and
> determined that you wrote the letter. No
> information was discovered to support your claim
> that inmate Huffman wrote the letter.

(Id. at 6-7.) From this court's review of the "kite"
and the known handwriting sample of Milhouse, the court
concludes that the DHO did not err in finding that the
"kite" was written by Milhouse.[7]

The DHO issued his decision on September 29,
2014, finding Milhouse guilty of Prohibited Acts 102A
and 203 and imposed the sanctions previously mentioned.
(Id. at 8.) Milhouse received a copy of the decision on
the same day and was advised of his appeal rights.(Id.)

On October 9, 2014, Milhouse filed an appeal
(Administrative Remedy No. 797870-R1) of the DHO's
decision with the Regional Office of the BOP. (Id. at 3-
4, 24.) This appeal was denied on November 7, 2014.

---

7. Milhouse has submitted numerous handwritten
documents to this court. Consequently, the court is
quite familiar with his handwriting style.

(Id.) Milhouse did not provide the court with any
evidence that he appealed the denial of Administrative
Remedy No. 797870-R1 to the Central Office the BOP.
Although Milhouse claims in his petition and traverse
that he submitted an appeal or administrative remedy
form to the Central Office of the BOP, records of the
BOP do not reveal such a filing and Milhouse did not
attach to his traverse a copy of the administrative
remedy form. Consequently, the court finds that Milhouse
failed to exhaust his administrative remedies.

Milhouse has not proven that he exhausted the
administrative remedy procedures set forth in 28 U.S.C.
§ 542.10 et seq. "[F]ailure to satisfy the procedural
rules of the [Bureau of Prisons'] administrative process
constitutes a procedural default." Moscato, 98 F.3d at
760-761 (citing Francis v. Rison, 894 F.2d 353,355 & n.2
(9th Cir. 1990); Sanchez v. Miller, 792 F.2d 694, 697 (7th
Cir. 1986)). If a default renders the administrative
process unavailable, review of a habeas claim is barred
"absent a showing of cause and prejudice[.]" Id. at 761.

Cause is generally only established where the
petitioner shows that "some external objective factor

17

impeded" his or her efforts to comply with the Bureau of Prisons's administrative remedy provisions. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). As the United States Court of Appeals for the Second Circuit has noted, where "legitimate circumstances beyond the prisoner's control preclude him from pursuing his administrative remedies," cause is established. <u>Carmona v. U.S. Bureau of Prisons</u>, 243 F.3d 629, 634 (2d Cir. 2001).  Milhouse has not established cause for his failure to seek timely review with the Central Office of the Regional Office's November 7, 2014, denial of Administrative Remedy No. 797870-R1.

The court discerns no evidence of an external objective factor which prevented Milhouse from pursuing his available administrative remedies.  Furthermore, even if Milhouse established cause, he has not established prejudice because it is clear that all of the procedural due process requirements of <u>Wolff</u>, <u>Hill</u> and the BOP regulations have been met.

It is clear from the court's review of the facts set forth above that Milhouse was accorded the right to appear before an impartial decision-making body;  he was

18

given twenty-four hour advance written notice of the disciplinary charges; he had an opportunity to call witnesses and present documentary evidence in his defense; he had the opportunity to have a staff representative assist him but declined such representation; and he received a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Furthermore, the DHO found Milhouse guilty based on "some evidence" as required by Superintendent v. Hill, *supra*.  The officers who investigated the incident and the DHO were familiar with Milhouse's handwriting and appropriately made a judgment that he was the one that wrote the "kite" found in inmate Huffman's cell.

Milhouse was accorded all of his due process rights established by Wolff and there was some evidence to support the decision of the DHO in accordance with Hill.  Consequently, Milhouse's petition must be denied.

Finally, because Milhouse is not detained because of process issued by a state court and the petition is not brought pursuant to 28 U.S.C. § 2255, no

action by this court with respect to a certificate of appealability is necessary.

　　　　　An appropriate order will be entered.




　　　　　　　　　　　　　　　 s/Sylvia H. Rambo
　　　　　　　　　　　　　　　SYLVIA H. RAMBO
　　　　　　　　　　　　　　　United States District Judge



Dated: August 24, 2016